UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SHABARI NAYAK,  :
 : Civil Case No.
  Plaintiff, :
 : **COMPLAINT**
 v. :
 :
JEFFERIES GROUP LLC, PETER SCOTT, in his : **Jury Trial Demanded**
individual and professional capacities, and :
CHRISTOPHER M. KANOFF, in his individual :
and professional capacities, :
 :
  Defendants. :
 :
 :
------------------------------------------------------------X

Plaintiff Ms. Shabari Nayak ("Ms. Nayak" or "Plaintiff"), by and through her attorneys, Wigdor LLP, as and for her complaint against Defendants Jefferies Group LLC, ("Jefferies" or the "Bank"), Peter Scott, and Christopher M. Kanoff (collectively, "Defendants") hereby alleges as follows:

## PRELIMINARY STATEMENT

1. Jefferies Group LLC holds itself out as a premier investment bank, providing financial services and asset management on a global scale. On its website, Jefferies advertises itself as the "Best Place to Work of the Decade." However, behind this positive and self-congratulatory façade, Jefferies fosters an environment in which female executives are valued less than their male counterparts.

2. Ms. Shabari Nayak is an exceptional and highly dedicated investment banker who spent her entire 12-year financial services career at Jefferies. Ms. Nayak waited as late in her pregnancy as possible before disclosing that fact to her managers due to Jefferies' well-known history of targeting pregnant women, specifically investment bankers.

1

3. In August 2015, Ms. Nayak informed Messrs. Scott and Kanoff of her pregnancy. Mr. Scott stated that her "**priorities would be changing**" and that he would help her find a position within the Bank that was "**less demanding**," such as in Human Resources. Mr. Kanoff, echoed the same sexist, condescending and presumptuous sentiment and told Ms. Nayak that "**we will work with you to figure out what impact [the child] will have on your role**."

4. Messrs. Scott and Kanoff's derisive and stereotypical comments were only an indication of what was to come. In December 2015, Ms. Nayak was informed that she would receive "zero bonus" for 2015.

5. What should have been a most joyous time in her life, as Ms. Nayak welcomed her first child into her family, has been transformed into a demeaning and anxious ordeal by the Bank's discriminatory and retaliatory actions against her that has effectively derailed her personal and professional aspirations.

6. Because of the unlawful discriminatory and retaliatory treatment she has suffered, Ms. Nayak was forced to terminate her employment, and she submitted her resignation on March 21, 2016 while on maternity leave.

## NATURE OF THE CLAIMS

7. The unlawful discrimination and retaliation described herein was committed in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq*. ("FMLA"), the New York State Human Rights Law, N.Y. Executive Law §§ 290 *et seq*. ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8-101 *et seq*. ("NYCHRL"), the Equal Pay Act of 1963, 29 U. S. C. § 206(d) ("EPA"), and the New York Equal Pay Law, New York Labor Law § 194 ("EPL").

## ADMINISTRATIVE PREREQUISITES

8. Ms. Nayak will be filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and will file an Amended Complaint alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*., and as amended by the Pregnancy Discrimination Act, following the EEOC's issuance of a Notice of Right to Sue.

9. Following commencement of this action, a copy of this Complaint will be served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

10. Any and all other prerequisites to the filing of this suit have been met.

## JURISDICTION AND VENUE

11. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the FMLA and EPA. The Court has supplemental jurisdiction over Plaintiff's related claims arising under State and local law pursuant to 28 U.S.C. § 1367(a).

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including employment practices alleged herein, occurred in this district.

## PARTIES

13. Plaintiff Shabari Nayak is a female employee of Jefferies who worked at its New York City office. She is a resident of the State of New York and at all relevant times met the definition of an "employee" and/or "eligible employee" under all applicable statutes.

14. Defendant Jefferies Group LLC is a foreign limited liability company with its headquarters located at 520 Madison Avenue, New York, New York. At all relevant times, Jefferies was an "employer" within the meaning of all applicable statutes.

15. Defendant Peter Scott was a Managing Director, Americas Head of Industrials Investment Banking at Jefferies Group LLC. At all relevant times, Defendant Scott met the definition of a "supervisor" and "employer" of Plaintiff under all applicable statutes.

16. Defendant Christopher M. Kanoff is the Global Co-Head of Investment Banking at Jefferies Group LLC. At all relevant times, Defendant Kanoff has met the definition of a "supervisor" and "employer" of Plaintiff under all applicable statutes.

## FACTUAL ALLEGATIONS

**Ms. Nayak's Career and Dedication to the Bank**

17. In or around July 2004, Ms. Nayak began her employment at Jefferies after beginning her career in global investment banking with the Bank as an intern.

18. Indeed, Ms. Nayak has dedicated her entire career to the Bank, and thrived during her time there.

19. Based on a variety of measures, throughout her eleven (11) year career at Jefferies, Ms. Nayak was consistently ranked at the top of her cohort of bankers.

20. Indeed, as a result of being ranked highly each year, in 2012, as a Vice President, Ms. Nayak was nominated by the Bank to be recognized by The Women's Bond Club of New York as one of the Bank's "Rising Stars."

21. In 2013, Ms. Nayak was promoted to Senior Vice President ("SVP") – one level below the coveted Wall Street rung of Managing Director ("MD").

22. Ms. Nayak spent most of her time with Jefferies in the Industrials Group, which as a whole focuses primarily on companies across a wide range of sectors, including, but not limited to, aerospace and defense; automobiles; chemicals; construction and building material; diversified services; power; renewables; and infrastructure. She earned numerous promotions, accompanied by substantial raises and bonuses, throughout her time with the Bank.

23. Within the Industrials Group, Ms. Nayak was Head of Environmental Services in 2014. As Head of Environmental Services, Ms. Nayak was given coverage responsibilities seldom given to an SVP, an accomplishment that was in accordance with her success with clients.

24. Ms. Nayak was extremely successful during her time at Jefferies. While in 2014 Ms. Nayak brought in $2.6 million in gross revenue to the Bank, in 2015 alone, Ms. Nayak sourced and executed $3.75 million– a 45% increase in Year-Over-Year revenue.

25. Ms. Nayak was equally committed to contributing to the Bank in other ways, including through recruiting, leadership in multiple committees, and developing junior resources, and she ensured that the Investment Bank and Industrials Group in particular had the ability to bring in new talent.

26. In addition, Ms. Nayak was an active member of the firm's Best Practices committee, which attempts to identify broad-ranging concerns that the Bank's junior bankers face and leverage cross-functional teams to address these issues.

27. Ms. Nayak's dedication to the development of the Bank's most junior bankers demonstrates Ms. Nayak's passion about, and dedication to, the Bank, as she showed a willingness to go beyond her day-to-day responsibilities to help make the Bank successful.

28. Notably, at no point during her employment did Ms. Nayak ever receive a negative performance review.

29. In fact, Ms. Nayak was given another excellent year-end review in January 2015 and was informed that she was indeed on track to be promoted to MD at year-end 2016.

30. Indeed, Ms. Nayak's career had been on a marked upward trajectory during her tenure with the Bank.

31. Her dedication to the Bank, having worked there her entire career, and the assurances that she was on track to make MD, resulted in her turning down other opportunities in favor of what she perceived as the promise and potential offered by the Bank.

**Ms. Nayak Discloses Her Pregnancy and Intention to Take Maternity Leave**

32. In late August 2015, Ms. Nayak informed her direct managers separately by telephone the happy news that she was expecting her first child, having been unable to coordinate in-person meetings in the two weeks prior.

33. Her first conversation was with Peter Scott, Americas Head of Industrials Investment Banking, and Ms. Nayak's direct supervisor.

34. In a remarkable example of the deep institutional biases that women, especially female executives, face in the workplace, Mr. Scott stated that as a result of her pregnancy, Ms. Nayak's "**priorities would be changing**."

35. Mr. Scott went on to volunteer that he would help find Ms. Nayak a position within the Bank that was "**less demanding**," such as in Human Resources.

36. Ms. Nayak was understandably astonished, and replied that she was "where [she] wanted to be," she had "great momentum," she expected to "make MD next year," and "[Human Resources] was not the career path she wanted to be on."

37. Ms. Nayak, of course, had no intention – either at that time, or now – to end her career in investment banking.

38. To the contrary, she fully intends to continue to achieve her goals and advance her investment banking career.

39. Ms. Nayak informed Christopher Kanoff, Global Co-Head of Investment Banking and member of Jefferies' Executive Committee, about her pregnancy on or around the time she spoke with Mr. Scott, but in a separate telephone conversation.

40. In an astounding indication of the pervasive attitude within the Bank that women are incapable of having senior level careers while raising a family, Mr. Kanoff's response to Ms. Nayak's pregnancy was nearly identical to that of Mr. Scott.

41. Incredibly, Mr. Kanoff echoed the sexist, condescending and presumptuous sentiment conveyed by Mr. Scott, stating that Ms. Nayak's "**priorities will change**" as a result of her pregnancy.

42. Apparently repeating a sentiment embedded somewhere in the Jefferies "playbook," he too told Ms. Nayak that "**we will work with you to figure out what impact [the**

**child] will have on your role**," further underscoring the Bank's intention to marginalize Ms. Nayak as a direct result of her decision to start a family.

43. Mr. Kanoff went on to chide Ms. Nayak by way of the remark that at one time he was forced to "reschedule a skiing trip with [his] family" due to his children.

44. In short, these two utterly insensitive and demeaning conversations made clear that in the minds of management, Ms. Nayak's pregnancy had irreversibly changed – if not ended – her investment banking career at the Bank.

45. In mid-December 2015, Ms. Nayak attended a year-end review with Messrs. Scott and Kanoff.

46. During that meeting, Ms. Nayak was informed that her feedback had suggested that she had "taken her foot off the gas pedal" over the past year, a comment that is unsupported by fact or reality and reflects the institutional biases held by decision-makers at Jefferies.

47. Indeed, this comment betrays the sexist animus behind Ms. Nayak's treatment, as a successful female executive is suddenly seen by male colleagues as less dedicated to her work simply due to the fact that she has become pregnant.

48. Of course, Ms. Nayak's dedication to her job was such that she continued to travel on Bank business during the eighth month of her pregnancy, against her doctor's recommendation.

49. Messrs. Scott and Kanoff then informed Ms. Nayak that she would not be receiving any bonus whatsoever for 2015.

50. Upon information and belief, Messrs. Scott and Kanoff participated in the decision to deny Ms. Nayak any bonus for 2015.

51. This news came as an utter shock to Ms. Nayak and was completely without basis in her work performance.

52. Ms. Nayak's 2015 performance exceeded her 2014 performance by a large margin, a year in which she received a six-figure bonus.

53. Ms. Nayak anticipated at that time that her 2016 revenue would be at least $6 million, or nearly double her 2015 number.

54. Clearly, denying Ms. Nayak any bonus at all was intended to marginalize her as the only senior woman in the Industrials Investment Banking Group.

55. Upon learning her bonus number – or the lack thereof – Ms. Nayak expressed her anger and asked Messrs. Scott and Kanoff if "she needed to find a new job." Mr. Scott responded that her "zero bonus" was not a "signal" that she should leave the Bank.

56. However, the Bank's decision to refuse to pay her any bonus for 2015 clearly points to the fact that she was indeed being pushed out of the Bank, based solely on her pregnancy and leave.

57. Ms. Nayak's baseline total compensation as a result of Jefferies' discriminatory decision to pay her no bonus completely derailed her compensation trajectory in that incentive compensation decisions are based largely on the bonus received the prior year.

58. In no uncertain terms, the Bank's decision to pay her no bonus reduced her total compensation by nearly 60%.

59. Furthermore, until she announced her pregnancy and her intention to take maternity leave, Ms. Nayak was on track to be promoted to Managing Director in 2016.

60. On March 9, 2016, Ms. Nayak wrote to the Bank, through counsel, to describe the unlawful discrimination she suffered at the Bank.

61. Despite having provided the Bank with considerable detail regarding the discriminatory comments and conduct, Ms. Nayak's complaints fell on deaf ears, as the Bank has made clear that her complaints will not be adequately investigated, let alone addressed or remedied. Indeed, the Bank was once again inclined to take the word of a male executive over a female one without giving it a second thought.

62. Through its actions (and inactions), the Bank had made it impossible for Ms. Nayak, or any reasonable person, to return to a workplace where she was valued less than men, discriminated against due to her pregnancy and her need for maternity leave, and where her complaints were ignored.

63. Accordingly, on March 21, 2016, Ms. Nayak communicated to the Bank that she was resigning her position, having been effectively and constructively terminated, as no reasonable person should be or could be expected to work in the environment created and fostered at Jefferies.

**Disparate Treatment of Women at The Bank**

64. Unfortunately, the treatment of women at the Bank makes Ms. Nayak's treatment, while completely unacceptable, unsurprising.

65. Women are almost entirely absent from upper-level management positions at the Bank.

66. The notable absence of women in upper management is a manifestation of the discriminatory decision-making that exists at all levels at Jefferies.

67. By way of example only, the Bank's Executive Committee has no women whatsoever.

68. There is only one woman on the Board of Directors and there are no female Officers.

69. Of the 33 MDs and SVPs in the Investment Banking's Industrials Group at the time, Ms. Nayak was the only female banker at that level.

70. Ms. Nayak was also one of only four female investment bankers in New York at the level of SVP or above.

71. Women at the bank, including Ms. Nayak, are treated differently than similarly-situated men at the Bank, and that difference is reflected through, *inter alia*, pay disparity.

72. By way of example only, Ms. Nayak's treatment stands in stark contrast to that of a male SVP in the Industrials Investment Banking Group.

73. Upon information and belief, this individual was awarded a substantial bonus this year, despite having no revenue solely attributable to him.

74. This individual performs the same or substantially similar work to that of Ms. Nayak.

75. In fact, Ms. Nayak both sourced her own deals and executed them with little or no senior support and therefore not only had additional responsibilities, but can trace every dollar of revenue she is credited with back to her own work, effort and results.

76. Nonetheless, Ms. Nayak was denied any bonus whatsoever for 2015.

77. Upon information and belief, the pay disparity between them was not due to a seniority system, merit pay system, system that measures earnings by quantity or quality of production, or any other differential based on any factor other than sex.

78. Upon information and belief, female executives are routinely denied, *inter alia*, the higher pay, bigger bonuses, and/or the opportunity to earn higher compensation, given to their male counterparts.

**FIRST CAUSE OF ACTION**
**(Interference in Violation of the FMLA)**
*Against Defendant Jefferies*

79. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

80. At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA. At all times relevant herein, Defendant was and is a "covered employer" within the meaning of the FMLA.

81. Defendant was obligated to provide Plaintiff with FMLA leave and was not permitted to use the taking of leave as a negative factor in employment actions.

82. By the actions described above, among others, Defendant violated the FMLA by unlawfully interfering with, restraining, or denying the exercise of Plaintiff's rights by, *inter alia*, denying her a bonus payment for 2015.

83. As a direct and proximate result of Defendant's unlawful conduct in violation of the FMLA, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

84. Defendant's unlawful actions constitute bad faith, malicious, willful and wanton violations of the FMLA for which Plaintiff is entitled to an award of liquidated damages.

85. As a direct and proximate result of Defendant's unlawful conduct in violation of the FMLA, Plaintiff has suffered and continues to suffer harm for which she is entitled to an

award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

## SECOND CAUSE OF ACTION
**(Retaliation in Violation of the FMLA)**
*Against Defendant Jefferies*

86. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

87. At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA. At all times relevant herein, Defendant was and is a "covered employer" within the meaning of the FMLA.

88. Defendant was obligated to provide Plaintiff with FMLA leave and was not permitted to use the taking of leave as a negative factor in employment actions.

89. Defendant violated the FMLA by unlawfully retaliating against Plaintiff for exercising rights protected by the FMLA by, *inter alia*, denying her any bonus payment in retaliation for asserting her rights under the FMLA, thereby subjecting her to an adverse employment action that would reasonably dissuade a reasonable person from exercising rights protected by the FMLA.

90. Defendant's unlawful and retaliatory actions constitute bad faith, malicious, willful and wanton violations of the FMLA for which Plaintiff is entitled to an award of liquidated damages.

91. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the FMLA, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

### THIRD CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL)
*Against All Defendants*

92. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

93. By the actions described above, among others, Defendants Jefferies, Scott and Kanoff discriminated against Plaintiff on the basis of her gender and/or pregnancy in violation of the NYSHRL by denying Plaintiff the same terms and conditions of employment available to others based on her gender and/or pregnancy, including, but not limited to, denying her a bonus payment for 2015 and the constructive termination of her employment.

94. As a direct and proximate result of Defendants Jefferies, Scott and Kanoff's unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law.

### FOURTH CAUSE OF ACTION
### (Aiding and Abetting Violations of the NYSHRL)
*Against Defendants Scott and Kanoff*

95. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

96. Defendants Scott and Kanoff knowingly or recklessly aided and abetted the unlawful and discriminatory conduct to which Plaintiff was subjected in violation of the NYSHRL.

95. As a direct and proximate result of Defendants Scott and Kanoff's unlawful aiding and abetting in violation of the NYSHRL, Plaintiff has suffered and continues to suffer

harm for which she is entitled to an award of damages, to the greatest extent permitted under law.

## FIFTH CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)
*Against All Defendants*

96. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

97. By the actions described above, among others, Defendants Jefferies, Scott and Kanoff discriminated against Plaintiff on the basis of her gender and/or pregnancy in violation of the NYCHRL by denying Plaintiff the same terms and conditions of employment available to others based on her gender and/or pregnancy, including, but not limited to, denying her any bonus payment for 2015 and the constructive termination of her employment.

98. As a direct and proximate result of Defendants Jefferies, Scott and Kanoff's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and costs.

99. Defendants Jefferies, Scott and Kanoff's unlawful and discriminatory actions constitute knowing, malicious, willful, wanton and reckless violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
### (Aiding and Abetting Violations of the NYCHRL)
*Against Defendants Scott and Kanoff*

100. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

101. Defendants Scott and Kanoff knowingly or recklessly aided and abetted the unlawful discrimination and retaliation to which Plaintiff was subjected in violation of the NYCHRL.

102. As a direct and proximate result of Defendants Scott and Kanoff's unlawful aiding and abetting in violation of NYCHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and costs.

103. Defendants Scott and Kanoff's unlawful aiding and abetting constitutes malicious, willful, wanton and reckless violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
### (Violations of the EPA)
*Against Defendant Jefferies*

104. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

105. During the period of Plaintiff's employment, Defendant Jefferies was subject to the provisions of the EPA. During that time, Defendant required Plaintiff to perform the same or substantially the same job position as male employees, requiring equal skill, effort, and responsibility under similar working conditions at the same establishment, and paid Plaintiff at a rate of pay, including salary and bonus, less than such male employees. The differential rate of

pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production, or upon a factor other than gender.

106. Defendant Jefferies engaged in patterns, practices and/or policies of employment which willfully, and in the alternative, unwillfully, discriminated against Plaintiff on the basis of her gender and by paying Plaintiff a lesser rate of pay, including salary and bonus, than that paid to male employees performing the same or substantially similar job duties which require equal skill, effort, and responsibility, and under the same working conditions and at the same establishments.

107. By the actions described above, among others, Defendant Jefferies has violated the EPA.

108. As a direct and proximate result of Defendant Jefferies' unlawful and discriminatory conduct in violation of the EPA, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief to the fullest extent permitted under law.

109. Plaintiff is further entitled to liquidated damages, reasonable costs and attorneys' fees.

### EIGHTH CAUSE OF ACTION
(**Violations of the EPL**)
*Against Defendant Jefferies*

110. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as in all of the preceding paragraphs as if fully set forth herein.

111. During the period of Plaintiff's employment, Defendant Jefferies was subject to the provisions of the EPL.

112. During Plaintiff's employment, Defendant Jefferies required Plaintiff to perform the same or substantially the same job position as male employees, requiring equal skill, effort, and responsibility under similar working conditions at the same establishment, and paid Plaintiff at a rate of pay, including salary and bonus, less than such male employees. The differential rate of pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production, or upon a bona fide factor other than gender, such as education, training, or experience.

113. Defendant Jefferies engaged in patterns, practices and/or policies of employment which willfully, and in the alternative unwillfully, discriminated against Plaintiff on the basis of her gender by paying Plaintiff a lesser rate of pay, including salary and bonus, than that paid to male employees performing the same or substantially similar job duties which require equal skill, effort, and responsibility, and under the same working conditions and at the same establishment.

114. By the actions described above, among others, Defendant Jefferies has violated the EPL.

115. As a direct and proximate result of Defendant Jefferies' unlawful and discriminatory conduct in violation of the EPL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

116. Plaintiff is further entitled to liquidated damages, reasonable costs and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants for the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York and the City of New York;

B. An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all monetary and/or economic damages;

C. An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiff's emotional distress;

D. An award of punitive damages in an amount to be determined at trial;

E. An award of liquidated damages in an amount to be determined at trial;

F. Pre-judgment interest on all amounts due;

G. An award of Plaintiff's reasonable attorneys' fees and costs; and

H. Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: August 17, 2016
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
    Douglas H. Wigdor
    Scott G. Grubin

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
sgrubin@wigdorlaw.com

*Attorneys for Plaintiff*